## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**LONNIE WARD,**

       **Petitioner,**

**vs.**                              **Case No. 4:12cv507-MCR/CAS**

**SECRETARY, FLORIDA DEPARTMENT OF
CORRECTIONS,**

       **Respondent.**

_____/

### REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On September 7, 2012, Petitioner Lonnie Ward, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  On August 7, 2013, Respondent filed an answer, with exhibits.  Doc. 15.  Petitioner filed a reply on October 7, 2013.  Doc. 19.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not entitled to

federal habeas relief, and the § 2254 petition should be denied.

## **State Court Proceedings**

By amended information filed on September 16, 2008, in the Second Judicial

Circuit, Leon County, in case number 08-CF-3301, the State of Florida charged

Petitioner Lonnie Ward, with eight counts in connection with events that took place on

September 11, 2008:

> (1) attempted first degree murder (victim Bessie L. Brooks), a life felony, in violation of section 777.04(4)(b) and 782.04(1)(a)1., Florida Statutes;

> (2) attempted first degree murder (victim Uley Hines), a life felony, in violation of section 777.04(4)(b) and 782.04(1)(a)1., Florida Statutes;

> (3) discharging a firearm from a vehicle within 1000 feet of another person, a second degree felony, in violation of section 790.15(2), Florida Statutes;

> (4) shoot at, within, or into an occupied vehicle, a second degree felony, in violation of section 790.15(2), Florida Statutes;

> (5) possession of a firearm by a convicted felon, a second degree felony, in violation of section 790.23(1)(a), Florida Statutes;

> (6) carrying a concealed weapon, a third degree felony, in violation of section 790.01(2), Florida Statutes;

> (7) burglary of a conveyance, a third degree felony, in violation of section 810.02(4), Florida Statutes; and

> (8) resisting an officer without violence, a first degree misdemeanor, in violation of section 843.02, Florida Statutes.

Doc. 15 Ex. A at 1-2.  Ward proceeded to a jury trial in January 2009 on all counts

except Count 5.  *Id.* Exs. B-D (transcript).  Ward testified at the trial.  *Id.* Ex. D at 287-

340.  On January 23, 2009, the jury returned verdicts, finding Ward guilty of the lesser

offense of attempted voluntary manslaughter on the first two counts and guilty as

charged on the remaining counts.  *Id.* Ex. A at 39-49, Ex. D at 437-39.  Ward entered a

no contest plea to the severed charge (Count 5) of possession of a firearm by a

convicted felon.  *See id.* Ex. A at 20-21.   On February 9, 2009, the trial judge

adjudicated Ward guilty and sentenced him to fifteen (15) years on the first five counts,

five (5) years on Counts 6 and 7, and 11 months and 29 days on Count 8.  *Id.* at 60-69;

Ex. F (sentencing transcript).  On Count 5, the judge also ordered Ward serve a three-

year minimum for the firearm.  Doc. 15 Ex. A at 65.  The judge directed that the

sentences run concurrent except that the sentence on Count 5 run consecutive to the

others, resulting in a total sentence of thirty (30) years in prison.  *Id.* at 67; Ex. F at 37.

Ward appealed his judgment and sentence to the First District Court of Appeal

(DCA), assigned case number 1D09-1106.  Doc. 15 Ex. A at 71-73, Ex. G.  Ward's

appellate attorney filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967),

asserting he could find no issue of arguable merit.  *Id.*  The First DCA issued an order

allowing Ward time to file a pro se brief; he did not file one.  *Id.* Ex. H; online docket for

1D09-1106 at www.1dca.org. The State did not file an Answer Brief.  *See* online docket

for 1D09-1106 at www.1dca.org.  The First DCA affirmed the case per curiam without

an opinion on December 7, 2009.  Doc. 15 Ex. I; Ward v. State, 23 So. 3d 1188 (Fla. 1st

DCA 2009) (table).  The mandate issued January 5, 2010.  Doc. 15 Ex. I.

On May 26, 2010, Ward filed in the First DCA a petition alleging ineffective

assistance of appellate counsel, assigned case number 1D10-2745.  *Id.* Ex. PD-2.  On

August 25, 2010, the First DCA denied the petition on the merits.  *Id.* Ex. O; Ward v.

State, 46 So. 3d 606 (Fla. 1st DCA 2010) (table).  The court denied rehearing on

October 25, 2010.  Doc. 15 Ex. Q.

On May 11, 2011, Ward filed a pro se motion for post-conviction relief in the state

trial court, pursuant to Florida Rule of Criminal Procedure 3.850.  Doc. 15 Ex. R.  He

subsequently filed an addendum.  *Id.*  By order rendered November 30, 2011, the court

summarily denied the motion.  *Id.* at 46-46; Doc. 15 Ex. S.  The court denied rehearing.

*Id.* Ex. R at 54.  Ward appealed to the First DCA, which per curiam affirmed the case,

number 1D12-809, without an opinion on July 19, 2012.  *Id.* Ex. V; Ward v. State, 94 So.

3d 589 (Fla. 1st DCA 2012) (table).  The mandate issued August 24, 2012.  *See* online

docket for 1D12-809 at www.1dca.org.

As indicated above, on September 7, 2012, Ward timely filed a § 2254 petition.

Doc. 1.  Ward raises three grounds, all of which allege ineffective assistance of counsel

(IAC):

> (1) IAC – Trial counsel misadvised Petitioner Ward to reject a favorable plea offer based on an unreasonable assessment of Ward's chances of prevailing at trial.  Doc. 1 at 5-7 (ECF page numbers).
>
> (2) IAC – Trial counsel allowed the standard jury instruction for attempted manslaughter by act to be modified to substitute for the word "would," as contained in the standard jury instruction, the broader term "could."  *Id.* at 9-10.
>
> (3) IAC – Trial counsel failed to do pre-trial research and investigation, and thus failed to learn that the defense that counsel planned to use at trial (self-defense) did not apply to the charges against Ward.  *Id.* at 11.

Respondent has filed an answer with exhibits.  Doc. 15.  Petitioner has filed a reply.

Doc. 19.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for

persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  *See* Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker,

633 F.3d 1272 (11th Cir. 2011).

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated

on the merits in State court proceedings,' § 2254(d), an additional restriction applies."

Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  The federal court may not grant

relief unless the state court's adjudication of the claim:  (1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).   "This is a

'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which

demands that state-court decisions be given the benefit of the doubt.'"  Cullen, 131

S.Ct. at 1398 (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford

v. Visciotti, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that

was before the state court that adjudicated the claim on the merits."  Cullen, 131 S.Ct.

at 1388.

 Relevant here, in Strickland v. Washington, the U.S. Supreme Court adopted a

two-part test for IAC claims:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial
> whose result is reliable.

466 U.S. at 687.  To demonstrate ineffectiveness, a "defendant must show that

counsel's performance fell below an objective standard of reasonableness."  Id. at 688.

To demonstrate prejudice, a defendant "must show that there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have

been different."  Id. at 694.  "A reasonable probability is a probability sufficient to

undermine confidence in the outcome."  Id.  For this Court's purposes, importantly, "[t]he

question 'is not whether a federal court believes the state court's determination' under

the Strickland standard 'was incorrect but whether that determination was unreasonable

– a substantially higher threshold.'"  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)

(quoting <u>Schiro v. Landrigan</u>, 550 U.S. 465, 473 (2007)). "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard." *Id.*

### <u>Ground 1</u>: IAC – Rejection of Plea Offer

In his first ground, Petitioner Ward asserts his trial counsel rendered ineffective assistance by advising him to reject the State's plea offer of 20 years "based upon an unreasonable assessment of Petitioner's chances of winning at trial." Doc. 1 at 5-6. Ward explains that, prior to trial, his attorney told him the State had made a plea offer of 20 years in prison, in exchange for Ward entering a guilty plea to all counts as charged. *Id.* at 5. During discussions, Ward's counsel gave an opinion "concerning Petitioner's chances of receiving a not guilty verdict in the event of going to trial." *Id.* Counsel indicated Petitioner had two possible defenses: misidentification and self-defense. *Id.* at 6. "After presenting these facts, counsel advises petitioner to reject the State's plea offer . . . and proceed to trial." *Id.* In particular, Ward asserts defense counsel presented only the theory of self-defense and failed to investigate, research, and understand applicable law "clearly states that self-defense is not available to a person who is attempting to commit, committing, or escaping following the commission of a forcible felony such as burglary." *Id.* In presenting only the self-defense theory to the jury, trial counsel had to admit Ward's guilt. *Id.* Ward asserts that, at the time of the

trial, neither defense counsel or Petitioner was aware that self-defense was not

available as a defense in this case. *Id.* at 6-7.

As both Ward and Respondent indicate, Ward raised this ground as the first

claim in his Rule 3.850 motion filed in state court. Doc. 1 at 8; Doc. 15 at 4; *see* Doc. 15

Ex. R at 2-5, 12-13. The state post-conviction trial court denied the claim, making the

following findings:

> In ground 1, defendant asserts that his attorney was ineffective for
> advising him to reject the plea offer and proceed to trial. Absent some
> specific deficiency on counsel's part, advising a defendant to reject a plea
> bargain and go to trial does not establish a legally sufficient ineffective
> assistance of counsel claim. Millan v. State, 44 So. 3d 694 (Fla. 3d DCA
> 2011). In this case defendant contends that his attorney was deficient
> because she did not understand that self defense was not a legal defense
> since he was involved in a burglary. Ordinarily, it might require an
> evidentiary hearing to determine whether defendant was prejudiced as he
> indicated. However, in this instance after defense counsel acknowledged
> defendant's guilt in opening statement, defendant was asked if he agreed
> with the strategy. Defendant specifically acknowledged his understanding
> and agreement with the strategy. (Att. A, trial transcript, pages 23-27
> (opening); pages 54-55 (colloquy)). While counsel mentioned self
> defense, it was clearly not expected to be a total legal defense. As
> indicated, the goal was to avoid the attempted premeditated murder
> charge. In fact, this strategy prevailed and defendant was only convicted
> of attempted manslaughter. The record establishes that counsel was not
> deficient and defendant was not prejudiced.

Doc. 15 Ex. R at 46. On appeal, the First DCA per curiam affirmed the case without an

opinion. These rulings are entitled to AEDPA deference and review is limited to the

record before the state court. *See* 28 U.S.C. § 2254(d); Cullen, 131 S. Ct. at 1402;

Richter, 131 S. Ct. at 784-85; Wright v. Sec'y of Dep't of Corr., 278 F.3d 1245, 1255

(11th Cir. 2002).

The record supports the factual findings of the state post-conviction trial court.

Specifically, during her opening, defense counsel, Deborah Whisnant, made the

following statements:

> The only reason I wanted the information was to tell you right up front that the only thing we will be disputing in this trial, because there are eight counts, Count 1 charges attempted premeditated murder, and Count 2 charges premeditated murder.  There's another count that charges shooting at an occupied vehicle, and another charge that charges shooting from a vehicle.  Those two sound alike but they're two separate things.

> Those are the only issues that are going to be at issue.  Those are the only things that will be at issue.  What I mean by that is, there will be no denial of a car burglary.  There will be no denial of having a gun and there will be no denial of shooting a gun.

> What this case is going to be about is whether Lonnie Ward – and the evidence will show that Lonnie Ward did not have a premeditated design to kill two individuals.  The evidence will show you that yes, the prosecutor said he didn't shoot wildly in the street where cars were going, that Lonnie Ward was in a car that was retreating from the scene of a crime.  Running away.  Retreating.  And that the owners of the car, and they are not on trial here, chased this car.  And that in the chase the car, the Grand Prix, the silver Grand Prix that was chasing the white Grand Prix that Lonnie Ward was in, was driving very fast, was trying to keep close to the car.  In fact, you will hear testimony that they were almost bumper to bumper at one point.  The car was swerving wildly.

> Mr. Hines who was in the passenger seat put his head out the window, and that the car never backed up or never -- I don't know what you call it, went back or like stopped or slowed down until Mr. Ward took his gun and shot at the bumper of the car. Not at the window, not at Bessie Brooks or Uley Hines, but at the bumper of the car below the grill.

> Once that happened, the car slowed down some. And you will hear testimony that Mr. Ward did hold a gun out again but did not pull the trigger, so that is not a misfire; that's not a jam. He did not pull the trigger. Because his purpose had been served in that the car stopped coming after them.

The silver Grand Prix had tried to pass and get on the side of their car. Mr. Ward was acting, as you will hear from the evidence, to the circumstances surrounding him.

You will hear that there are two defenses, basically, to attempted homicide, and that is excusable and justifiable --

MR. BAUER [prosecutor]:  Objection, Judge. I was not permitted to discuss the law.

THE COURT:  Sustained.  It doesn't matter whether you were or not.  But I will sustain the objection.

MS. WHISNANT:  The facts of the case will show what we talked about in jury selection, justifiable, what we talked about self-defense. The only issue in the case will be, one, the issue is whether Mr. Ward had a premeditated design to kill --

MR. BAUER:  Same objection. Argumentative.

THE COURT: Well, I think she's just saying they don't contest that. I don't think that would be argumentative. The rest of the case -- she is just pointing out what the issue is, and I think that's all right.

MS. WHISNANT: The facts will show that he had absolutely no intent, which is required, to kill anyone.  And therefore that he had no intent to kill anyone, that the only reason, the facts will bear out, and the evidence will show that he took the gun out and shot at the bumper was to stop the chase, stop from being pushed off the road, wrecked, and die or possibly be injured. That's the only reason the gun was taken out.

You will also hear testimony that prior to this, prior to the cars even moving out of the trailer park, you will hear evidence, as Mr. Bauer said, that Mr. Hines went up to the car. He wasn't shy or anything, he went up to the car and threw something at it, indicating he meant business. Then after he did that, he and his wife got in their silver Grand Prix and followed this car on a high speed chase.

So all of these circumstances will come out to show you Mr. Ward's state of mind and what Mr. Ward did in response to that car chasing them down the road and trying to swerve to the side of them. And it will be self-defense, number one; and number two, that he did not mean the kill anyone, and that's why no one was shot.

      Thank you very much.

Doc. 15 Ex. B at 24-27.  During a subsequent break, with the jury out of the courtroom,

the following transpired:

> THE COURT: . . . While we're talking, though, let me ask you, because in opening statement you basically said we're guilty of all this stuff, except for we didn't have intent –
>
> MS. WHISNANT: Yes, the gun offenses, except for the possession of a firearm by a convicted felon.
>
> THE COURT: Is your client on board with that?
>
> MS. WHISNANT: Yes.
>
> THE COURT: Is that right, Mr. Ward?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: That's the strategy your attorney has adopted, and you adopt it as well?
>
> THE DEFENDANT: Yes.
>
> MS. WHISNANT: In fact, I will say that before we started, I leaned over to him and said I want to make sure that we're on the same page.
>
> THE COURT: Right.  And are we, Mr. Ward?
>
> THE DEFENDANT: About saying that I'm guilty of about everything else?
>
> THE COURT: Right.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay.  I just want to make sure.  All right.

*Id.* at 54-55.

Ward was thus on board with defense counsel's strategy and plan, as reflected by his answers to the trial judge's questions.  At the conclusion of the trial, the court instructed the jury on self-defense and the forcible-felony exception.  Doc. 15 Ex. D at 371-73.  It appears from the trial transcript that defense counsel objected to the inclusion of the forcible-felony instruction.  *Id.* at 359.  To the extent Ward argues that defense counsel should have known self-defense was not available as a defense theory due to the forcible felony exception, as Respondent indicates, it is not clear that such defense was legally unavailable in this case, where Ward burglarized a car, the car's owners then pursued him as he fled in another car, and, later during that car chase, Ward fired shots.  Doc. 15 at 6; *see* Slattery v. Sec'y, Dep't of Corr., No. 6:10cv232-Orl-36DAB, 2012 WL 2115497 at *4 (M.D. Fla. June 11, 2012) (explaining: "Pursuant to Florida law, the forcible-felony exception to self-defense is not applicable unless the defendant was engaged in an independent forcible-felony.  *See* Martinez v. State, 981 So. 2d 449, 454 (Fla. 2008) ("[F]or the forcible-felony instruction to apply, there must be an independent forcible-felony other than the one which the defendant claims he or she committed in self-defense.").  Thus, for the forcible-felony exception to be applicable, the defendant must have been engaged in another independent forcible-felony, such as burglary or aggravated battery.  *See, e.g.*, Marshall v. State, 604 So. 2d 799, 803 (Fla. 1992) (concluding that forcible-felony exception was applicable to felony murder or third degree murder where the underlying felonies were burglary and aggravated battery).").  *See also* Rodgers v. Tucker, No. 3:11cv197-LAC/MD, 2012 WL 1758701 at *11 (N.D. Fla. Apr. 24, 2012) (report and recommendation explaining, among other things, "What

defense to pursue is clearly a strategic decision.  'By 'strategy,' [courts] mean no more

than this concept: trial counsel's course of conduct, that was neither directly prohibited

by law nor directly required by law, for obtaining a favorable result for his client.'

Chandler [v. United States], 218 F.3d [1305] at 1314 n.14 [(11th Cir. 2000)].  Matters of

trial strategy and tactics, unless plainly not within the bounds of reasonableness, and

even if unsuccessful, do not constitute ineffective assistance.").

    Moreover, as the state post-conviction court found, although defense counsel did

mention self-defense, from a review of the record, it was not expected to be a total legal

defense.  Defense counsel's apparent strategy – to avoid a conviction for attempted first

degree murder by attacking the intent element – prevailed as the jury found Ward guilty

of only convicted of attempted manslaughter.

    In addition, during the sentencing hearing, Ward stated that he wanted to go to

trial because he did not try to hurt anyone:

> I made a stupid decision; I owned up to that decision.  I'm not trying to
> hide it.  The only reason I went to try it was because I didn't – as you sat
> through trial.  I did not try to hurt nobody.  I did wrong by going in the car; I
> was wrong for that; I'm owning up to that.  But trying to hurt someone like
> that –  . . . I'm not no threat to society.

Doc. 15 Ex. F at 17-18.  Ward explained, as he did during his trial testimony, that he

was "running away, not trying to sit there and hurt no one."  *Id.* at 19; *see* Doc. 15 Ex. at

303-07 (portion of Ward's trial testimony where he explained that he fired a shot at the

ground and his "intent was not to hurt anybody" and "[a]t that moment, I was just trying

to get away still.  I was in fear of my life.").  Defense counsel's trial strategy, to which

Ward specifically agreed, evidently proved effective as the jury convicted Ward of lesser offenses on the first two counts.

Ward has not shown the state courts' rulings rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

**Ground 2: IAC – Modified Standard Jury Instruction**

In his second ground, Ward asserts his trial counsel rendered ineffective assistance "for allowing the standard jury instruction for attempted manslaughter by act to be modified to substitute the word 'would' as contained in the standard instruction to the broader term 'could.'" Doc. 1 at 9-10.  Respondent argues that beyond this assertion, Ward has not exhausted this ground as "[t]he facts and arguments presented in Ward's second ground here simply do not correspond to those advanced in state court."  Doc. 15 at 8-9.

In the second claim of the Rule 3.850 motion, Ward raised a similar claim.  In denying that claim, the state post-conviction trial court made the following findings:

> In ground 2, defendant contends that his attorney, Deborah Whisnant, was ineffective for agreeing to use the word "could" in the jury instruction for attempted manslaughter.  Obviously some of the original discussion about jury instructions was not of record.  However, the jury asked a question that focused on the distinction between the first and second degree murder instructions where the word "would" was used as opposed to the manslaughter instruction where the term "could" was used. (Att. A, trial transcript, pages 427 - 433) In response to the question, Judge Lewis offered to instruct however the defense desired.  Defense

counsel agreed to leave the instruction as originally presented to the jury. This decision was consistent with the defense strategy throughout the trial which defendant had agreed to at the beginning of the trial; had supported in his testimony; and confirmed at time of sentencing.  (Att. B, sentencing transcript, page 18) As defendant indicated at sentencing, his whole goal in going to trial was to establish that he was not trying to hurt anyone.  His strategy prevailed at trial; now he simply wishes to disclaim this strategy. Ground 2, is refuted by the record.

Doc. 15 Ex. R at 47. On appeal, the First DCA per curiam affirmed the case without an opinion.  These rulings are entitled to AEDPA deference and review is limited to the record before the state court.  *See* 28 U.S.C. § 2254(d); <u>Cullen</u>, 131 S. Ct. at 1402; <u>Richter</u>, 131 S. Ct. at 784-85; <u>Wright</u>, 278 F.3d at 1255.

The record supports the factual findings by the state post-conviction trial court. In particular, after the closing arguments, the jury began deliberating and then returned with a question.  The following transpired on the record:

(Whereupon, the jury retired to deliberate its verdict).

THE COURT: Here's the question. Due to the fact there were some errors in our jury instruction packet, missing words and such, could you please clarify the following.  Attempted second degree murder states the defendant intentionally committed an act which would have resulted in the death, dot dot dot, would have is underlined, attempted voluntary manslaughter states that the defendant intentionally committed an act which could have, underlined could have, dot dot dot. Can you confirm the words could have and would have are correct.

I would say yes, they are, correct.

MR. BAUER:  Judge, I looked this up as a precaution, if you have the blue code book, is that the color that you have? I can tell you the page number. If you look on page J-40 of the jury instructions. 6.6, and I see the word would.

THE COURT:  Well, I know. Remember, we had this discussion, because --

MS. WHISNANT:  And I objected to it.  I said I wanted would.

THE COURT: Right. But we agreed that could was okay.

MS. WHISNANT:  Not me. I said would is better, because it's broader.

THE COURT: Yeah, I know you said that originally, but then I said could would really be better for you.

MS. WHISNANT:  Well, I think could be worse.

THE COURT: Let me put it this way, if you tell me to do would, I'll be happy to, and that's what I said then. I said if you want would, I'll put would, but I thought could would be better because it's really more accurate. If you have manslaughter, it's not would have caused death. That's the whole idea. You're doing something that really could cause somebody's death, but you didn't intend it. It's not that it would have, it might have. That's why I thought that was more accurate.

MS. WHISNANT: That's why I hate jury questions.

THE COURT: That's, I think, one the reasons they are having a problem with it at the First DCA, and they keep sending it back.

MS. WHISNANT: Oh, you were talking about that, correct.

THE COURT: So what I want to do is avoid a problem with it. So if both the State and defense want me to change that and say would have, I will do it.

MS. WHISNANT: I'll think about it for a minute, if you will just give me a second.

THE COURT: okay.

(Brief pause)

MS. WHISNANT: We agree to not change it, Your Honor.

MR. BAUER: Well, here's the problem we have. I actually have a case on appeal that they're remanding now because the defense requested a special instruction on manslaughter, and what they requested was they committed not the act, but intentionally killed another person under

manslaughter, and that was the problem with the -- I believe the new case law that says it must be an act which would have killed, instead of an act that killed. Or instead of intentionally killing, it was an act that would have killed. That's the distinction. It sounded the same as first degree murder.

Defense counsel generally asks for the intentional killing on manslaughter, which has now been disapproved by the court system, and they've called it fundamental error. So I don't know -- if it becomes fundamental error, it would be reheard no matter what. So if it comes down to that one word, and the jury instructions say would, I would hesitate to change it. That's my only question.

THE COURT: The problem is that the cases I'm referring to say that standard jury instruction is not correct, and if you give it it's fundamental error.

MR. BAUER: As to intentionally killing.

THE COURT: They don't really suggest what would be the proper one. What I gave you was what I thought, logically speaking, is more accurate of what manslaughter is.

MR. BAUER: If we can do this. Normally we cannot request something, or defense counsel specifically can't request something that then is illegal. If it's fundamental it doesn't matter whether they agree with it or not. If we have a stipulation from defense counsel that this is not error, this is what they're asking for, and I state an objection to it, I think we're okay. Because I don't want to have an issue of fundamental error. If we agree that right now, right here today this is what we want to say and there's no objection on either side, I'm okay with it.

THE COURT: Okay.

MS. WHISNANT: Well, I think if I acquiesce and say okay to the instruction, that waives --

THE COURT: It may or may not. It may not even waive it if you say it's okay. All I know is to do it the best I can. There's a record that I'm telling the appellate court this is what I think. They say the standard is not good, but they don't say exactly what it should be, and this seems to make sense to me, and as long as the defendant is okay with it, that's probably the best bet we have.

> MR. BAUER: And I would distinguish this from any other case where defense counsel can make a strategy decision where could might be better for her, and if she's making that decision, I think that's a strategic decision that relates specifically to this case. I think that's what counsel is doing, and she's not objecting to could, as I understand it.
>
> THE COURT: You're just restating what she said. Like I said, I will give it either way.
>
> MR. BAUER: I will leave it up to Ms. Whisnant.
>
> THE COURT: She said could is fine. I will tell them that this is correct. They will probably still have a question about it, because it's still confusing.

Doc. 15 Ex. D at 427-32.  The jury returned to the court room and the judge answered the question:

> I did read the question to the attorneys, and we discussed it, and sometimes these – especially in this area, it's very confusing.  But yes, the answer to your question, which I read, is basically attempted second degree has the term would have, and manslaughter has the term could have, and that is correct in your jury instructions.

*Id.* at 433.

Ward has not demonstrated that defense counsel's decision concerning the jury instruction was anything other than trial strategy.  *See, e.g.*, Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994) ("Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioner's to bear, is and is supposed to be a heavy one.").  As the state post-conviction court found, this strategy apparently prevailed as Ward was convicted of the lesser offenses of Attempted Voluntary Manslaughter on the first two

counts, rather than the charged offenses of Attempted First Degree Murder.  *See* Doc. 15 at 39-44.

Ward has not shown the state courts' rulings rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 3: IAC – Defense of Self-Defense

In his third ground, Ward asserts trial counsel rendered ineffective assistance by failing to do pretrial research and investigation regarding the self-defense theory.  Doc. 1 at 11.  Ward asserts that if counsel had properly prepared, she would have learned that the defense she planned to use at trial did not apply to Ward's case.  *Id.* Respondent answers that this ground essentially mirrors the first ground.  Doc. 15 at 12.

Indeed, this ground is substantially similar to Ground 1.  For the reasons given in the analysis of that ground, this ground should also be denied.

### Conclusion

Based on the foregoing, Petitioner Lonnie Ward is not entitled to federal habeas relief.  The § 2254 petition (Doc. 1) should be denied.

### Certificate of Appealability

Case No. 4:12cv507-MCR/CAS

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## **Recommendation**

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner

Ward's § 2254 petition (Doc. 1).  It is further **RECOMMENDED** that a certificate of

appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on December 2, 2014.

S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**